REBECCA JOHNSON, EXECUTRIX, *v.* PEYTON JOHNSON ET AL.

**Wills—Payment of Debts and Legacies.**

Debts and legacies of a testator should be made out of the personal estate of the testator, unless the will, in express terms, makes them a charge upon real estate, or it appears from the will that the personal estate was to be exempt therefrom.

**Wills—Devise to Use of Wife.**

Where a will provides that the testator's wife should have all his real estate to do with as she pleases during her life, the remainder at her death to be sold and the proceeds divided equally among his brothers and sister, it relates to what remains after the sale of so much as is necessary to pay a certain legacy which is made a charge thereon, and not to a sale for the wife's own use.

**Wills—Construction—Transposition of Clauses.**

In order to arrive at the intention of the testator, the clauses of a will may sometimes be transposed.

**Wills—Bequest to Wife.**

A will was held to give all of the testator's personal estate to his wife without restriction or encumbrance.

**Wills—Payment of Bequest.**

A legacy which was made a charge on the property of the testator was held not payable out of the personal property of the testator, which was bequeathed absolutely to his wife.

APPEAL FROM FRANKLIN CIRCUIT COURT.

December 12, 1873.

OPINION BY JUDGE PRYOR:

Thomas S. Johnson died in the county of Franklin, leaving a last will and testament, containing various provisions as to the disposition of his estate, the effect and meaning of which is involved in so

much doubt as to have originated the present controversy between his devisees.

He had no children, and left surviving him his widow, Rebecca Johnson, the appellant, and several brothers and sisters. His estate seems to have been entirely free from debt, and the only incumbrance upon it was a special legacy of two thousand dollars, directed by his will to be paid to Mary R. McIntyre. The important questions in the case are as to the character of the estate his widow took in the testators realty, and when this is ascertained, out of what portions of the estate this legacy to Mary McIntyre is to be paid, the land or personalty.

By the first clause of his will he makes his wife executrix, with the request that no bond or security be required of her. In the second clause he gives to his wife "all the personal property I have of all kinds and description, to do with as she pleases." Third clause: "I give unto my wife, Rebecca Johnson, all the real estate I own or have a right to, to do with as she pleases during her life, and such of it as remains at her death undisposed of, to be sold, and the proceeds therof to be equally divided between my two brothers, Peyton Johnson and Henry N. Johnson, and Mrs. Jane Hearn." The portion given to Mrs. Hearn is made separate estate, and at her death the title to rest in her children. 'Fourth clause: "I give unto Mary Rebecca McIntyre the sum of two thousand dollars, which is to be paid her at my death by said executrix, and if it be necessary to sell any of my property in order to make this payment, my directions are that it be done." These provisions contain the whole of the testator's will, except a provision by which one of his sisters is given one dollar, and no more.

It is a well recognized principle that the personal estate of a testator is the proper fund out of which debts and legacies are to be paid, unless made a charge upon the real estate by the will itself, in express terms, or the intention to exempt the personal estate from the burden clearly appears. In the construction of a will, the object is to arrive at the intention of the testator, and when ascertained, this intention must govern. There is no doubt but the testator intended his wife should have all of his personal estate to dispose of as she pleased. She seems to have been the principal object of his bounty, the whole tenor of the will indicating an intention on his part to make a liberal provision for her. The value of the devisor's

personal estate does not appear from the record. His real estate consisted of two houses and lots in the city of Frankfort, one, his residence, and the other a livery stable. He also owned a small tract of land, containing eleven acres, not far distant from that city. He knew the real estate owned by him was ample to pay the legacy to Rebecca McIntyre and any debts that he might owe. It was his purpose, however, to make some provision for his two brothers and his sister, Mrs. Hearn, and with this view he gave to his widow the uncontrolled use of his real estate for life, and at her death, that part of it remaining undisposed of, to be sold and the proceeds divided between his two brothers and sister.

It is true, this clause, in relation to the real estate, construed without reference to the other provisions of the will, might indicate an intention on the part of the testator to give his wife the right to sell any and all of the real estate, if she saw proper, leaving his brothers and sisters to take only so much as she might elect not to sell, or so much as remained undisposed of at her death; but when construed with reference to the whole will, it is evident that the devisor intended to make such a devise to his brothers and sister as would give them this real estate in remainder, except such as might be sold to pay debts, or rather the legacy left to Rebecca McIntyre. The devisor evidently foresaw the necessity of disposing of a part of the realty for the payment of the $2,000 legacy. The whole of his personal estate he had already given to his wife, by the second clause of his will to do as she pleased with, and the only mode of paying the legacy was by selling the realty. He, therefore, in the third clause of the will, after giving to his wife all of his real estate to do with as she pleased during her life, gave what might be undisposed of, to his brothers and sister, directing it to be sold, and the proceeds divided between them. He empowered his executrix to sell any of his estate, if necessary, to pay this legacy, and when giving this direction may have supposed that his widow and devisees might make some agreement by which the legacy could be paid without requiring a sale of any part of the property. The words "undisposed of," in the third clause of the will, had reference not to what might be sold by the wife for her own use, as she had no such power, but what was undisposed of after paying the legacy, the wife having no other interest in the land, in her own right, than a life estate.

If these clauses of the will out of which this necessity for a construction arises, are transposed, and the order in which they are written reversed, the third clause, giving to Rebecca McIntyre two thousand dollars, directing its payment at his death by his executrix, and vesting her with the power to sell any of his estate to pay it, if necessary, and the fourth clause giving to his wife his realty to do with as she pleases during her life, and such as remains undisposed of at her death to his brothers and sister, then we have the power to sell, in the third clause, and the devise of that undisposed of to his brothers and sister in the fourth clause, showing clearly the meaning and intention of the testator, viz., that his real estate should be made subject to the payment of this legacy, and vesting the power in the wife, his executrix, to sell for no other purpose. This mode of construction is sometimes resorted to in order to arrive at the intention of a devisor, although unnecessary in this case, as we think it perfectly manifest that the devisor intended to give the whole of his personal estate to his wife, without restriction or encumbrance.

And now the chancellor, by subjecting it to the satisfaction of this legacy or the payment of his debts, might be defeating his intention altogether, by exhausting this entire fund. Nor will it do to say that although he intended to make provision for his brothers and sister, that still it was his intention to give his wife the power to defeat at any time this devise to them, by selling the land and making such disposition of the proceeds as she saw proper. It was the testator's fixed purpose to give to his blood kindred, what of the real estate was undisposed of, after selling what might be necessary to pay the legacy or any other encumbrance on the estate; in other words, that he did not intend to charge his personal estate with the payment of the legacy at his death, is no argument against the construction of the will, as the executrix could make the payment as readily by selling the realty, as by collecting the debts due the testator, for that purpose. By the construction of the will, each claim is made to harmonize with the other. The wife retains the whole of the personal estate. The legacy is paid by a sale of the realty, and the brothers and sister get that portion of it undisposed of, thus executing the wishes and intention of the devisor. The executrix, by reason of the power vested in her by the will, can only sell so much of the real estate as will pay the legacy, and no

more. If there are debts against the estate, the case should go to the commissioner and so much of the real estate sold by the judgment of the court as may be necessary to pay them.

The court below having adjudged that the legacy must be paid out of the personal estate, the judgment is reversed and cause remanded for further proceedings consistent with this opinion. Judge Peters concurs in the reversal of the judgment, but is of the opinion that the wife has the power, if she so elects, to sell any or all of the real estate for her own use. Judge Lindsay dissents from the opinion, so far as it relieves the personalty from the payment of the debts and legacy, and concurs in the judgment rendered by the circuit judge.

*Lindsay, for appellant.*

*Hord, for appellees.*